UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

JASON COLLINS,                                )
Plaintiff,                                    )
                                              )
    v.                                        )
                                              )
UNUM LIFE INSURANCE COMPANY                   )
OF AMERICA,                                   )
                                              )
Defendant.                                    )

## COMPLAINT

COMES NOW Plaintiff, Jason Collins, and for his claims and causes of action against Defendant, Unum Life Insurance Company of America, states:

### PARTIES

1. Jason Collins ("Collins") is a resident and citizen of the State of Missouri.

2. Unum Life Insurance Company of America ("Unum) is an insurance company authorized to do business in the State of Missouri.

### JURISDICTION AND VENUE

3. Collins brings his claim pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events

and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Since 2005, Century Concrete and/or CRH Americas, Inc. ("Century") employed Collins.

10. Century employed Collins as a concrete mixing truck driver.

11. Collins's occupation involved a range of exertional and non-exertional duties, including the following:

> Ability to safely and effectively operate all functions of a ready-mix truck including, but not limited to, manual transmission, brakes, clutch, gas pedal, chute, drum, truck radio and related equipment.
>
> Work requires repetitively operation of a manual transmission, clutch, brakes and gas pedal; reading a map and understanding directions to job sites, lifting a 45 to 55 -pound chute on the ready-mix truck; climbing up onto the driver's seat and climbing down to the ground; climbing up the truck ladder to rinse off hopper and inspect load slump and climbing down to the ground; and bending and reaching to check oil levels, fuel levels and tire pressures.
>
> Work requires frequent exposure to dust, dirt, loud noise, heat, cold, and working in all weather conditions. Normal operation of mobile equipment may result in recurring jarring and vibratory exposure.

12. Collins's occupation required exertional component duties situated the medium level as defined by the Dictionary of Occupational Titles.

13. Century sponsored a group welfare benefits plan for its participating employees ("Plan").

14. The Plan constitutes an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1).

15. The Plan offered a number of benefits, including long-term disability ("LTD") benefits.

16. At all relevant times, Collins has been a Plan participant and covered person.

17. Century is the administrator of the Plan.

18. Century delegated to Unum the function of issuing benefit claim determinations.

19. Unum's group insurance policy ("Policy") articulates the conditions that covered Plan participants must satisfy to receive LTD benefits.

20. The Policy defines "Disabled" as follows:

2

> You are disabled when Unum determines that:
>
> - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> After 12 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.
>
> You must be under the regular care of a physician in order to be considered disabled.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute disability.

21. The Policy defines "Regular Occupation" as:

> **REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

22. The Policy defines "Material and Substantial Duties" as:

> **MATERIAL AND SUBSTANTIAL DUTIES** means duties that:
>
> - are normally required for the performance of your regular occupation; and
> - cannot be reasonably omitted or modified.

23. An eligible and qualifying participant may receive up to 12 months of LTD "Own Occupation" benefits, to be paid at 60% of the participant's pre-disability earnings.

24. In 2018 and 2019, Collins saw Dr. Mark Chaplick, DO for pain management. As a result of a herniated disc, he received epidural injections and opiate medications.

25. On March 15, 2019, Collins ceased working.

26. He left his occupation as a result of back pain from an L5-S1 disc herniation. The condition ultimately required a hemilaminectomy.

27. Collins did not want to stop working. To the contrary, he voluntarily stopped using narcotic medication, as it precluded him from performing his occupation per Department of

3

Transportation regulations.

28. On March 21, 2019, Collins saw Dr. Chaplick for pain management. Notes indicated that Collins was "very protective of his job and does not want to do anything to interfere with his employment."

29. Collins has not worked for Century or any other employer from March 16, 2019, through the present.

30. On March 26, 2019, Collins saw family medicine physician Dr. John E. Shockley, DO. Collins' chief complaint was characterized as follows:

> **Chief Complaint:** wants to be seen, possibly need off oxycodone due to truck driving for work, but pt is still in pain and needs something he can take while driving

31. Dr. Shockley stopped Collins' opiate pain medication and prescribed Collins Meloxicam and certified Collins' handicap placard.

32. On March 26, 2019, Collins attempted to return to work. After roughly 20 minutes of work, he presented to the Century in-house clinic for medical care and was sent home.

33. Collins became disabled due to a combination of medical impairments that prevented him from performing his Regular Occupation.

34. Collins sought short-term disability benefits, and Unum paid those benefits in full, through September 20, 2019.

35. On March 29, 2019, Collins saw orthopedist Dr. Terrence Pratt, MD. A neurosurgical opinion was recommended.

36. On April 12, 2019, Dr. Pratt opined that Collins was unable to work due to his use of pain medication, which Century prohibited for its drivers.

37. On April 22, 2019, neurosurgeon Dr. Yusef Mosley, MD advised Unum that Collins' surgery produced the following work limitations:

4

> Restrictions/Limitations: What have you advised your patient to avoid doing?
> No lifting/pushing/pulling >10lbs. No repetitive or forceful bending/twisting. No driving while taking narcotic pain meds

38. On April 25, 2019, Dr. Pratt completed a Unum physician statement noting Century would not allow Collins to drive on his pain medication.

39. On May 23, 2019, Collins saw Dr. Pratt for ongoing care. Collins was disappointed with continued post-operative lower extremity pain and numbness. On exam, Collins exhibited tenderness in his thoracic and lumbar regions, as well as limited motor function and diminished lower extremity reflexes.

40. On May 29, 2019, Dr. Pratt completed a Unum physician statement noting Collins' inability to work and recommending review at a later date.

41. On June 18, 2019, Dr. Pratt opined as follows:

> He continues to have symptoms with some improvement in sensory symptoms. He has not changed functionally and will remain off work until his reassessment with the neurosurgeon in August.
> Electronically signed by Terrence Pratt, MD at 6/18/2019 4:39 PM

42. On July 2, 2019, Dr. Pratt renewed his opinion in a physician statement form for Unum.

43. On July 16, 2019, Collins saw Dr. Chaplick. Collins reported frustration with a lack of improvement in pain following his surgical intervention. Dr. Chaplick added Lyrica to Collins' medications.

44. On August 13, 2019, Dr. Pratt opined that "it is unlikely that [Collins] will have a change in his status for the next few months."

45. On August 14, 2019, Dr. Pratt completed an updated physician statement form for Unum again emphasizing that Collins status was not likely to change for the next few months.

46. By August 21, 2019, Unum opened Collins' LTD claim.

5

47. On August 25, 2019, Collins sought information from Unum about the transition of STD to LTD.

48. An August 27, 2019, post-surgery MRI of Collins' lumbar spine showed the following:

> L4-5: Minimal diffuse disc bulge is seen. There is facet and ligamentous hypertrophy. No evidence for significant central canal or foraminal stenosis.
>
> L5-S1: Postoperative changes are seen. Disc space narrowing and disc desiccation is present. Osteophytes are seen. Diffuse bulging annulus is present. There is a focal right paracentral disc protrusion. This narrows the right lateral recess. Central canal measures 8 mm in AP diameter. There is bilateral foraminal stenosis. There is mass effect upon the right S1 nerve root. There is also soft tissue noted to the right of the thecal sac possibly representing epidural fibrosis. Postcontrast images may be helpful if clinically indicated.
>
> IMPRESSION: Discogenic disease noted at L5-S1.

49. In an intake interview with Unum, Collins described the functions his job, which are summarized by Unum as follows:

> Physical & cognitive duties performed and how much time spent on each (travel, equipment used, & processes responsible for) EE stated he would go in, inspect truck, pull it down, get loaded, maintain concrete in truck, bring to site and offload it, on the job w/ concrete truck for ~2hrs. After concrete is offloaded he has to climb ladder on truck to wash chutes, has to hang heavy chutes, make sure everything is secure to truck, drive back to plant and if they aren't busy he would hand wash trucks. EE stated they wash their trucks a lot. Does this 4-5x/day or more. Comes back to plant, hand wash trucks and drums, and at the end of the day all of the drivers come in and do manual labor like shoveling sand. Could be 8-12hr day.

50. On September 1, 2019, Collins followed up with Unum on his August 25, 2019, request.

51. On September 10, 2019, Collins again contacted Unum regarding the status of his claim.

52. On September 20, 2019, Dr. Pratt renewed his opinion that Collins' status was not likely to change over the next few months.

53. In September 2019, Unum investigated Collins social media activity. The investigation did not reveal any activity inconsistent with Collins' disability.

54. Effective October 4, 2019, Unum approved Collins LTD claim.

55. Unum found that Collins' limitations would extend into December 2019:

> Duration/RTW: per the 10/1/19 forum, given available information with recommended injections from PM and Dr. Pratt's recent WCN advising no OO demands, it remains clinically reasonable that the EE would be unable to perform OO demands including exertion up to 50 lbs. 3/16/19 - 9/20/19 ongoing to 12/12/19 NOV with Dr. Mosley.

6

56. Following approval of Collins' claim, Unum advised that Collins was required to apply for Social Security disability benefits.

57. Collins applied for Social Security disability benefits and provided proof of application to Unum.

58. After its initial October 2019 approval, Unum continued its review of Collins' claim.

59. On November 26, 2019, Unum concluded that Collins did not possess skills for sedentary occupations.

60. On November 26, 2019, Unum found that Collins was unable to perform his occupational demands through December 12, 2019.

61. Century terminated Collins' employment. As a result, he was no longer covered under its health insurance plan.

62. On January 31, 2020, Collins saw Dr. Mosley for follow up on his September 2019 back surgery.

63. Collins complained to Dr. Mosley of continued lumbar and lower extremity pain. On exam, he exhibited an abnormal gait. Dr. Mosley indicated that Collins had a slight broad-based disc bulge with a decompression. Dr. Mosley indicated that Collins was not a good candidate for another surgery due to his morbid obesity.

64. Because Collins lacked health insurance, he could not afford weight loss surgery.

65. On February 3, 2020, Unum's notes indicate that Collins advised Unum as follows:

> Typical day: EE stated he gets up, does some stuff around the house, easy chores.
>
> Assistance throughout the day: wife helps w/ cooking and driving
>
> Driving: limited, someone takes him to dr appts
>
> Biggest barrier from RTW: EE stated the same, cannot stand/sit/walk long distances, can only sit/stand for about 10min until in complete pain.

66. As a part of its ongoing review, Unum attempted to obtain Collins' medical records.

67. Unum's third-party medical records vendor failed to obtain Collins' records from St. Luke's Hospital. It advised Unum that there were no records effective December 26, 2019. Unum did not receive Collins' St. Luke's records that post-dated its vendor's December 26, 2019, request. Unum failed to obtain Collins' records pre-dating November 1, 2019.

68. Although Collins has satisfied the Policy's requirements, Unum has paid no further LTD benefits since its initial decision terminating benefits on the claim.

69. On March 2, 2020, Unum recommended closing Collins' claim.

70. Unum's March 2, 2020, recommendation was not supported by the opinion of any physician.

71. Unum's account of its March 4, 2020, conversation with Collins stated as follows:

> EE stated he has $35 to his name, dad is coming to get him, wife is a gambling addict, she cheated on him, and is going to set up a new bank acct. EE stated he is disabled and cannot do anything. EE stated his wife has been looking into his acct and didn't know if it affected his claim. EE stated he changed the email w/ the CC. EE stated he didn't want his wife fucking up his claim and apologized for swearing.

72. During its March 4, 2020, conversation with Collins, Unum did not advise Collins that it would be closing his claim.

73. On March 5, 2020, Unum closed Collins' claim.

74. From March 5 to March 7, 2020, Collins received inpatient psychiatric care at CenterPoint Hospital. Collins presented following an attempted suicide and was admitted for treatment.

75. From March 9 to March 13, 2020, Collins received inpatient psychiatric care at the University of Kansas Hospital for his suicidal ideation.

76. While receiving psychiatric care, Collins complained of chronic back pain. Medical professionals provided narcotic pain medication.

77. On March 17, 2020, Collins attended an independent evaluation with Dr. Kala Danushkodi, MD. Dr. Danushkodi examined Collins and provided the following limitations:

8

> I recommend no restrictions to sitting. Consider breaks to change positions with prolonged sitting of more than 30 minutes to relieve pain
> I recommend he can stand and walk for 2 hours 30 min. at a time with rest breaks to change positions for pain relief. He should be restricted from balance activities, climbing and kneeling.
> I estimate he can lift up to 20 pounds at the waist level.
> Recommend functional capacity evaluation formal testing to determine more accurate work restrictions
> Kala Danushkodi, M.D.

78. Dr. Danushkodi's limitations precluded Collins from performing his Regular Occupation.

79. On March 18, 2020, Collins received pain management care at KC Pain Centers. Medications were continued.

80. On April 17, 2020, Collins appealed Unum's decision terminating LTD benefits.

81. Collins' appeal included argument, as well as additional medical evidence and medical evidence.

82. On April 27, 2020, Collins saw Dr. Olson for a toe fracture. Collins complained of pain and anxiety. He reported weight loss but remained 396 pounds. Dr. Olson also assessed lumbar disc disease and recommended continuing care with pain management and neurosurgery.

83. On May 19, 2020, Collins submitted additional medical records to Unum.

84. On May 20, 2020, Collins received pain management care at KC Pain Centers. He complained of lower and middle back pain. Medications were continued.

85. On June 3, 2020, imaging revealed that Collins' right toe remained fractured and had not changed in appearance since April 5, 2020.

86. On June 17, 2020, Collins saw physician Dr. Brent Koprivica, MD for an evaluation. Dr. Koprivica opined that Collins' medical impairments limited him such that he would not be able to sustain employment in any capacity:

> When one looks at the limited abilities to captively sit, captively stand or walk along with their unpredictable nature, it is my opinion that it is unrealistic to believe that an ordinary employer would employ Mr. Collins or that Mr. Collins would be able to sustain employment in any capacity as work is customarily performed in the open labor market.

87. On June 17, 2020, Collins saw Dr. Amar Patel, MD at Rockhill Orthopedic Specialists for

9

his fractured toe. He had been unable to exercise due to his back and broken toe. Collins weighed 425 pounds.

88. Dr. Patel recommended an MRI and placed Collins in a boot.

89. On June 21, 2020, Collins received ongoing pain management care at KC Pain Centers. He complained of pain in his lower back radiating into his hips and right leg. Medications were continued.

90. On July 31, 2020, Collins submitted additional medical records to Unum.

91. On August 12, 2020, Unum provided Collins with the preliminary reports of its medical consultants, physiatrist Dr. Barry C. Gendron, DO and endocrinologist Dr. John F. Coughlin, MD.

92. Dr. Gendron concluded that Collins "[t]rue functional capacity is not known."

93. Dr. Coughlin, recruited through Unum's third-party vendor, largely deferred to Dr. Gendron's conclusion.

94. On August 27, 2020, Collins responded to Dr. Gendron's report, emphasizing the multiple abnormal exam findings in support of his claim.

95. On October 12, 2020, Collins submitted to Unum additional pain management medical records.

96. On October 15, 2020, Unum made available a supplemental report by Dr. Coughlin. Dr. Coughlin opined that the records did "not provide a basis for support of lack of capacity."

97. Collins advised Unum that he was uninsured and did not have any additional evidence to provide Unum.

98. On October 21, 2020, Unum issued its final decision denying Collins' claim.

99. Unum's final decision indicated that Collins' occupation was situated at the medium

10

Case 4:20-cv-00877-BCW   Document 1   Filed 11/02/20   Page 10 of 15

exertional level.

100. Unum's reviewing medical consultants did not find a single functional limitation affecting Collins' work capacity, despite his unsuccessful back surgery and morbid obesity.

101. Unum's reviewing medical consultants did not personally examine Collins.

102. No medical professionals have accused Collins of medication misuse.

103. Collins has exhausted administrative remedies.

104. Unum has paid no benefits beyond March 5, 2020.

105. Collins remains Disabled as defined by the Policy.

CAUSES OF ACTION
COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

106. Collins realleges the preceding paragraphs as if fully set forth herein.

107. Collins is entitled to all unpaid and accrued LTD benefits, as Unum:

   a. Made an unfavorable decision without substantial evidence;

   b. Failed to consider each of Collins's medical impairments (including morbid obesity) and their resulting limitations;

   c. Mischaracterized and ignored medical records and opinions;

   d. Failed to provide its reviewing personnel all relevant evidence;

   e. Mischaracterized Collins's complaints, symptoms, medical conditions, abilities, and functional limitations;

   f. Relied on a doctor without the sufficient training, expertise, or specialty to fully evaluate each of Collins's impairments;

   g. Mischaracterized Collins's Regular Occupation and job duties;

   h. Failed to perform a reasonable occupational or vocational review;

   i. Mistakenly invoked the Policy's pre-existing condition provision; and

   j. Issued an unfavorable decision that was arbitrary and capricious.

11

108. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Collins is entitled to an award of actual damages for losses suffered.

109. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

110. Unum has not satisfied its obligation to pay Collins LTD benefits.

111. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Collins prays for judgment against Unum for unpaid LTD, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

112. Collins realleges the preceding paragraphs as if fully set forth herein.

113. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

114. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

115. As the Plan's designated claims administrator and entity exercising discretion in claims administration, Unum is a fiduciary.

116. Collins participated in and benefitted from the Plan as previously indicated.

117. As the payor of benefits and the entity responsible for benefits determinations Unum

operates under an inherent structural conflict of interest.

118. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs Unum's actions as a fiduciary.

119. In its use of a biased third-party vendor to recruit medical consultants, Unum breached its fiduciary duties.

120. Unum's communications with Collins were inadequate and deficient such that it breached its fiduciary duty.

121. Unum did not identify the types of evidence necessary to satisfy Unum's interpretation of the Policy's definition of "Disability." Unum's conduct is inconsistent with 29 CFR § 2560.503-1(g)(1)(iii) and is evidence of its breach of fiduciary duty.

122. In failing to adequately apply the Policy's applicable provisions, including each component of the definitions of "Disability," "Regular Occupation," and "Material and Substantial Duties," Unum breached its fiduciary duties.

123. Unum failed to ask Collins to undergo an Independent Medical Exam, as authorized by the Policy. In doing so, Unum breached its fiduciary duty.

124. Unum's review was inconsistent with its own guidelines and procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims and vocational reviews. In failing to comply with its internal guidelines and claims processing procedures, Unum breached its fiduciary duties.

125. Unum did not compensate and use its medical and vocational consultants for the exclusive purpose of providing benefits to Plan participants. Nor did it do so for the purpose of defraying reasonable expenses in administering the Plan. Rather, Unum

13

contracted with these consultants for the purpose of denying benefits, compensating them at rates that did not comport with its duty to defray reasonable expenses. This conduct is indicative of a breach of Unum's fiduciary duties.

126. Unum denied Collins's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

127. Unum failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Collins and the Plan's participants and beneficiaries generally.

128. Unum's repeated improper conduct demonstrates that ordinary relief under 29 U.S.C. § 1132(a)(1)(B) is not an adequate remedy.

129. Unum's violations of regulations alone allow Collins the right to pursue any remedy under Section 502(a) of ERISA, including 29 U.S.C. § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

130. Unum's violations of federal regulation also subject its decision to *de novo* review.

131. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Collins prays for an order finding Unum's LTD determination binding for purposes of his LTD claim; for an order that Unum retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Unum in its fiduciary capacity; for an equitable accounting of benefits that Unum has withheld; for the disgorgement of profits enjoyed by Unum in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a

constructive trust; for an award of attorney fees; for an equitable order prohibiting Unum from the use of biased third-party vendors; for an equitable order removing Unum as the administrator of claims; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, LLC

By: /s/ Derrick Pearce
Derrick Pearce, Mo. #42793
Kyle H. Sciolaro, Mo. # 64568
103 W 26th Ave., Ste. 290
Kansas City, MO  64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF